J. U. REHMEL et al., Appellees, v. BOARD OF SUPERVISORS et al., Appellants.

**SHERIFFS AND CONSTABLES:** Deputies—Qualifications—Non-residence. One disqualified by nonresidence from holding the office of sheriff may yet be qualified to hold the deputyship. Secs. 48 (Par. 19), 1180, 1266 and 5099, Code, 1897, and Secs. 499, 499-a, and 510-b, Sup. Code, 1913, are not inconsistent with this holding.

*Appeal from Muscatine, District Court.*—HON. L. J. HORAN, Judge.

MONDAY, NOVEMBER 1, 1915.

THIS action was brought by citizens and taxpayers of Muscatine county, Iowa, to enjoin the payment out of the county treasury of the deputy sheriffs appointed by the sheriff, for their services as such deputy sheriffs during the strike of the Button Workers' Union in the city of Muscatine. Prior to the time these deputy sheriffs were appointed, they were nonresidents of Iowa. After their appointment, they were residents of Muscatine, in the sense that they were present there and performed services as such deputy sheriffs at Muscatine. Defendants are the board of supervisors, and the individual members of the board, also the county auditor, county treasurer and the sheriff. There was a trial to the court and a permanent injunction issued against defendants, preventing the payment of the salaries for services of the deputy sheriffs. Defendants appeal.—*Reversed.*

*H. G. Thompson,* County Attorney, and *E. M. Warner,* for appellants.

*J. R. Hanley & Son,* for appellees.

PRESTON, J.—The case was tried upon an agreed statement of facts. On October 18, 1911, the board of supervisors of Muscatine county, Iowa, took the following action, as shown of record:

SHERIFFS AND
CONSTABLES:
deputies: qualifications: nonresidence.

"After a thorough discussion of the matter, it was unanimous conclusion of this board that the matter be left entirely in the hands of the sheriff to take such steps as he may deem necessary for the enforcement of law, preservation of peace and order, and the protection of our citizens; and in so doing he is assured of the full confidence and support of this board."

Nineteen deputy sheriffs were appointed by the sheriff, sixteen of whom were nonresidents, as above stated. No question is raised but that they were all appointed by the sheriff in the manner and form required by law and that they qualified by taking oath and giving a bond; and the statute in regard to the appointment of deputy sheriffs was in all respects complied with.

Upon a trial upon the merits, a decree was entered, enjoining the treasurer from paying the salaries of these deputies, upon the sole ground that they were nonresidents of the state of Iowa. As stated, they had resided within the state and in the city of Muscatine during the entire time covered by their service. The holding of the trial court was that the sixteen deputy sheriffs above named, being nonresidents of the state, were not eligible to the office of deputy sheriff. It is conceded that, if such persons are eligible, then they are entitled to receive the compensation they claim.

It is contended that we have in this state no statute which defines or prescribes the qualifications necessary for a person to be eligible to the office of deputy sheriff. The only statute bearing upon the question as to the qualification for the office of deputy sheriff is Sec. 510-b of the Code Supp., 1907, which provides:

"In all counties the sheriff shall in writing appoint one or more persons, not holding a county office, as deputy or deputies, for whose acts he shall be responsible and from whom he shall require a bond, which appointment and bond shall be approved by the officer having the approval of the principal's bond; and such appointment may be revoked in writing, which appointment and revocation shall be filed and kept in the auditor's office. In all cases the board of supervisors shall fix the number of deputies and shall fix the salary of such deputies at not exceeding one thousand dollars per annum in counties having a population of over twenty-eight thousand, and not exceeding six hundred dollars per annum each in counties having a population of less than twenty-eight thousand; and in all counties the chief deputy shall be paid by the sheriff out of the compensation allowed him under the provisions of the preceding section, and all other deputies shall be paid by the county."

It will be observed that the only qualification required of a person appointed deputy sheriff is that he shall be one "not holding a county office". The statute provides that for the acts of the deputy, the sheriff himself is responsible. It is the sheriff who shall require a bond of the deputy, according to the statute above quoted. It is the contention of defendants that the bond is given solely for the protection of the sheriff, and not, as appellees contend, for the benefit of the sheriff and others who may have a cause of action against his deputies.

Chapter 34, Acts of the 33d General Assembly, Code Supp., 1913, Secs. 499, 499-a, defining the duties of the sheriff and his deputy, provides:

"Sec. 2. It shall be the duty of the sheriff, by himself or deputy, to preserve the peace in his county, to ferret out crime, to apprehend and arrest all criminals, and in so far as it is within his power, to secure evidence of all crimes committed in his county, and present the same to the county

attorney and the Grand Jury; to file informations against all persons who he knows, or has reason to believe, have violated the laws of the state, and to perform all other duties pertaining to the office of sheriff, or enjoined upon him by law.

"Sec. 3. The sheriff, by himself or deputy, may call any person to his aid to keep the peace or prevent crime, or to arrest any person liable thereto, or to execute process of law; and when necessary, the sheriff may summon the power of the county."

These provisions do not prescribe the qualifications making a person eligible to the office of sheriff or deputy. It is contended by appellees, and was so held by the trial court, that, under the constitutional provisions prescribing the requirements necessary to qualify a person to exercise the right of franchise, it may be presumed that it was not intended by the framers of the Constitution that any such person should be eligible to an office who is required to administer or enforce the law and who is not qualified to vote for those who make the law.

*State v. Van Beek,* 87 Iowa 569, is cited to sustain the proposition that an alien could not hold the office of sheriff under the laws of Iowa. The court said:

"There is no provision in our Constitution or statute upon that subject, yet it is certainly a fundamental principle of our government that none but qualified electors can hold an elective office unless otherwise specially provided."

See also *State v. Smith,* 14 Wis. 497.

From the foregoing cases, it is contended that no person who is not a qualified voter is eligible to the office of sheriff, and such was the holding as applied to an alien. There is this difference between the office of sheriff and deputy sheriff: the first is elective and the other appointive. It is the claim of defendants that the deputy sheriff has no individual identity, or that the acts performed by him are acts of his

principal, or the sheriff under whom he acts. Appellants' cases in support of this proposition will be referred to later.

Perhaps we should first refer to other provisions of the statute cited and relied upon as having a bearing. Under the provisions of Code Sec. 5099, sheriffs and their deputies are made peace officers. Sec. 1180 provides that civil officers elected by the people or appointed to any civil office, unless otherwise provided, shall take and subscribe an oath to support the Constitutions, etc., and Sec. 1181 contains the provision in regard to giving bond. The holding of the trial court was that, under the provisions before quoted, deputy sheriffs have a distinct legal existence and are officers in their own official capacity, and not merely agents, and that, to be eligible, they must be residents of the county.

Plaintiffs also cite and rely upon *People ex rel. Andrus v. Board of Auditors,* 37 N. Y. Supp. 633, where it was held under the statutes of New York that the defendant board was not required to audit the claim presented by the plaintiff for services rendered by him in making an arrest as deputy sheriff in another county.

Sec. 48 of the Code, Par. 19, is also cited. This provides that:

"The term 'sheriff' may be extended to any person performing the duties of the sheriff, either generally or in special cases."

Sec. 1266 of the Code is also cited. This provides, in substance, that every civil office shall be vacant upon the happening of events enumerated, one of which, the third, is:

"The incumbent ceasing to be a resident of the state, district, county, township, city, town or ward by or for which he was elected or appointed, or in which the duties of his office are to be exercised."

It is thought, in view of all these provisions, that the qualifications required of a person to be eligible to the office

of sheriff apply with equal force to the office of deputy sheriff. And as to the last provision, that if the office becomes vacant because of the removal of the officer, therefore, a non-resident of such district or county may not be eligible to the office in the first instance.

It is conceded by appellants that, under the holding of this court in *State v. Van Beek*, 87 Iowa 569, an alien or non-resident is not eligible to hold the office of sheriff. And they concede that, under the authority of *State v. Brandt*, 41 Iowa 606, a deputy is in some senses an officer. But they contend that he is not an officer in such sense as to require that he be a resident of the county in which he is appointed. And it has been held in other cases that while, in a sense, a deputy sheriff is an officer, yet in executing a writ or process, he acts for the sheriff, and the holdings are that the deputy is only an agent for the sheriff and that he has no original power. This being so, it is only fair to the sheriff that he should be allowed, unless some law of the state forbids, to choose such persons as his deputies as he may himself desire. When appointed by him, they become his agents and their acts become his acts. See, as bearing upon this proposition: *Headington v. Langland*, 65 Iowa 276; *Brayton v. Town*, 12 Iowa 346. See also on this point: *Gutschenritter v. Whitmore*, 158 Iowa 256.

The precise question presented by this case has not been presented before any court, so far as counsel on either side have been able to discover, nor have we been able to find a case precisely in point. But cases have been cited where the question is essentially like the one at bar. *Wilson v. Circuit Judge* (Mich.), 49 N. W. 869, presented the question as to whether a woman was eligible to the office of deputy clerk of the court. At that time, women were not eligible to hold an elective office in the state of Michigan. It was held that she was eligible to that office under appointment. And in the case of *Harkreader v. State*, 35 Tex. Cr. R. 243, the Supreme Court of Texas held that a minor was eligible to

the office of deputy clerk. And in *Delaney v. State* (Texas), 90 S. W. 642, the same court held that a woman was eligible to the office of deputy clerk; and to the same effect see *Jeffries v. Harrington* (Col.), 17 Pac. 505, where the Supreme Court of Colorado held the same way. In all these cases, the appointees to the office of deputy were ineligible to serve as principal. They could not, within the law, be elected to the office of clerk, but the respective courts held that that fact did not debar them from serving as deputies.

It will be readily granted that the principle of local self-government ought not to be undermined. But it is conceivable that a situation may arise where those called upon to preserve law and order should not be permanent residents of the communities in which they serve. It is conceded in argument, and perhaps we should take judicial notice of the fact, that during the two years' strike at Muscatine, the military authorities of the state twice took charge and that they proved as powerless to preserve order and keep the peace as had the members of the local police force. The board of supervisors, by the resolution before referred to, left it to the sheriff, who selected these men, who, because of their lack of acquaintance, had no friends to serve nor enemies to punish in the administration of the law, and who, it appears, had no interest in the outcome of the controversy between the employers and the employed. There is no law prohibiting the sheriff from so employing such persons, and, having been duly appointed to render such service and having performed that service, we think they should be paid their salaries.

For the reasons given, the judgment and decree of the district court is reversed. Defendants may have a decree in the district court, or in this court, at their election, in harmony with the opinion.—*Reversed.*

DEEMER, C. J., WEAVER and EVANS, JJ., concur.